**UNITED STATES of America, Plaintiff,**

v.

**CLAWSON MEDICAL REHABILITATION AND PAIN CARE CENTER, P.C., and Ira A. Snider, Defendants.**

No. 89–70172.

United States District Court, E.D. Michigan, S.D.

Sept. 27, 1989.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Irwin Alterman, Farmington Hills, Mich., for defendants.

MEMORANDUM AND ORDER

COHN, District Judge.

I.

This is essentially a collection case. Defendant Ira Snider (Snider) was chief executive officer and sole shareholder of the Clawson Medical, Rehabilitation, and Pain Care Center (Clawson), which operated a chain of Part A Medicare clinics from 1979 to 1981. During these years, the United States overpaid Clawson by about $1,900,-000 for services rendered to Medicare beneficiaries. Clawson filed for reorganization in 1980 and currently has no assets. On January 16, 1989, the United States filed this action, demanding a judgment against Clawson for the overpayment plus accumulated interest (Count I) and a judgment against Snider personally on an alter ego theory (Count II). Snider has moved for summary judgment as to personal liability on the grounds that the six year federal statute of limitations relating to an action to recover medicare overpayments has run. He says that Clawson was technically the debtor and the bankruptcy stay did not bar an action as to him personally. The United States opposes the motion on the grounds that, as to Snider, this is an action to enforce a judgment against Clawson and the federal contracts statute of limitations does not apply to an enforcement action. The Court agrees that the government's claim

against Snider is an action for the collection of a judgment; Snider's motion for summary judgment will therefore be denied.

## II.

### A.

The Medicare program employs two distinct reimbursement mechanisms, Part A and Part B. Part B compensates individual health care providers on a reasonable charge basis; Part A compensates hospitals and other institutional providers based on the lesser of the customary charge or the reasonable cost of such services. 42 U.S.C. sec. 1395f(b). Because it is difficult to estimate in advance what a Part A provider's ultimate costs will be, the program has established a system of interim estimated payments, subject to a year-end accounting to adjust for underpayments or overpayments. 42 U.S.C. sec. 1395g.[1]

In order to begin the annual accounting process, the provider must supply a detailed cost report at the close of the fiscal year. 42 C.F.R. sec. 413.24. After reviewing the report, the intermediary determines which costs are properly reimbursable under the terms of the program. A Notice of Program Reimbursement (NPR) is then issued reflecting the intermediary's determination of allowable reimbursement and reflecting the amount to be recouped or added to the interim payments previously made. 42 C.F.R. sec. 1803(a). If the provider disagrees with the intermediary's determination and the amount in controversy exceeds $10,000, the provider may appeal the decision to the Provider Reimbursement Review Board (PRRB). 42 U.S.C. sec. 1395oo. An aggrieved provider may appeal the decision of the PRRB directly to a United States district court. 42 U.S.C. sec. 1395oo (f)(1).

### B.

Snider purchased Clawson in 1978 as a going business. Clawson negotiated interim reimbursement rates with Blue Cross and began operations. Blue Cross paid $311,000 in interim payments for the period from April 1, 1978 to March 31, 1979. On September 5, 1980, Blue Cross sent Clawson an NPR informing it that it had disallowed $192,986 in interim charges and demanding reimbursement. On October 7, 1980, Clawson filed for a Chapter 11 bankruptcy petition and a trustee was appointed. An NPR covering the period from April 1, 1979 to March 31, 1980 was sent to Clawson on November 20, 1981, which indicated that a total of $923,690 in overpayments were due. On December 18, 1981, Clawson ceased doing business. A final NPR covering the period from April 1, 1980 to March 31, 1981 was sent to Clawson on January 23, 1983, which indicated a balance due of $589,468. During the period from April 1, 1981 to December 18, 1981, Blue Cross paid Clawson $245,834. Because Clawson failed to provide the required cost reports, the entire sum was deemed an overpayment. It is not clear if and when an NPR was sent regarding this period. The Chapter 11 proceeding was converted to a Chapter 7 proceeding on October 1, 1985.

Following the cessation of Clawson's business operations, the United States filed numerous motions to dismiss the bankruptcy petition or lift the automatic stay in order to allow it to sue on the outstanding debt. Each time, the motion was opposed by attorneys representing Snider and/or Clawson. On January 10, 1989, the bankruptcy court finally lifted the stay as a consequence of an order of the district court.[2] This suit was commenced seven days later.

---

1. The Secretary of Health and Human Services is authorized to delegate to private insurance companies (so-called "fiscal intermediaries") responsibility for making interim payments and conducting the final accounting. 42 U.S.C. sec. 1395u. Here, Blue Cross–Blue Shield of Michigan (Blue Cross) acted as the fiscal intermediary.

2. It is difficult to understand the Stalingrad-like posture of Snider and Clawson in the bankruptcy court other than as an effort to avoid a day of reckoning regarding the claim of the United States. Indeed, the district court's order reversing the bankruptcy court's continuance of Clawson's stay makes express reference to such tactical efforts. *Matter of Clawson Medical Rehabili-*

## III.

### A.

 The United States moves for judgment on Count I for the full amount of the debt against Clawson. In support of its motion, the United States has filed a brief detailing the basis for the obligation and its right to prejudgment interest. Clawson contests the award of prejudgment interest on reimbursement for fiscal 1981 on the grounds that the United States unreasonably delayed the entry of a final determination of Clawson's liability for four months. Presumably, this argument is premised on the theories of estoppel and laches. Yet it is well settled that in order to prevail on these theories, some kind of affirmative prejudice must be shown. *See Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (estoppel); *Ruiz v. Shelby County Sheriff's Department*, 725 F.2d 388 (6th Cir.), *cert. denied*, 469 U.S. 1016, 105 S.Ct. 428, 83 L.Ed.2d 355 (1984) (laches). Clawson has failed to carry this burden. There is no allegation that had the intermediary furnished the NPR for fiscal 1981 in a timely manner, reimbursement would have been forthcoming. Indeed, the fact that Clawson was under the protection of the bankruptcy court at that time of the alleged delay conclusively negates this possibility. Under the circumstances, the Court can see no good reason for denying the United States the full measure of interest demanded and judgment against Clawson in the amount of $2,458,610 is therefore GRANTED.

### B.

 Since Clawson has no assets, the real issue in this case is Snider's personal liability for Clawson's debts. Snider moves for summary judgment on Count II on the grounds that suit is barred by the general federal six year statute of limitations which is applicable to actions to recover medicare overpayments. 28 U.S.C. sec. 2415(a). Snider says that any tolling of the statute by the entry of the bankruptcy stay applied to actions against the debtor, Clawson, and that no such tolling can be imputed to a personal action against a co-defendant. *See Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194 (6th Cir.1983). The United States contends that the claim against Snider is not barred because the federal contracts limitations period does not apply to actions for enforcement of a judgment. *United States v. Hannon*, 728 F.2d 142, 145 (2d Cir.1984); *United States v. Johnson*, 454 F.Supp. 762, 763 (D.Idaho 1978). This argument has merit.

The Court is aware of only a handful of cases dealing with the specific question of what limitation period applies to an action seeking to pierce the corporate veil. The United States has cited only one such case, *United States v. Southern Fabricating Co., Inc.*, 764 F.2d 780 (11th Cir.1985). These cases have uniformly held that such actions should be construed as actions to enforce a judgment.

In *Southern Fabricating, supra*, the United States sued a manufacturer of military supplies to recover excess profits under the Renegotiation Act, 50 U.S.C.App. sec. 1211 *et seq*. After a consent judgment was entered against the corporation, the government discovered that it was inactive and had limited assets. The United States then filed an action against the controlling shareholders, and two related companies on an instrumentality theory. The defendants argued that the government's suit was barred by the statute of limitations for contract actions. The government contended that its action was for the collection of a judgment and that the contract statute of limitations did not apply. After carefully examining the government's complaint, the court of appeals concluded that the action was to enforce a judgment by piercing the corporate veil and that the contracts statute of limitations did not apply.

In *Wm. Passalacqua Builders v. Resnick Developers South, Inc.*, 608 F.Supp. 1261 (S.D.N.Y.1985), *reh'g. denied* 611 F.Supp. 281 (S.D.N.Y.1985), the plaintiff obtained a judgment against the defendant which was only partially satisfied. The

plaintiff then filed an action against several related entities on alter-ego and instrumentality theories. The defendants claimed that the limitations period for the underlying action must be applied to the action and that the claim was thus time barred. The plaintiff argued that it was an action to collect a judgment and thus subject to New York's twenty year enforcement statute of limitation. The court held that

> under the *alter ego* and instrumentality theories the corporation and those who have controlled the corporation are treated as but one entity. *Fisser v. International Bank*, 282 F.2d 231, 234 (2d Cir. 1960). Thus the statute of limitations applicable to the corporation should apply to those who are using the corporation as an instrumentality. The action accrued against the corporation and any *alter egos* when the judgment was entered. The action to enforce the money judgment is therefore timely.

*Id.* at 1264.

The Michigan Court of Appeals recently accepted this alter ego limitations rule in *Belleville v. Hanby,* 152 Mich.App. 548, 394 N.W.2d 412 (1986). In *Hanby,* plaintiff sustained an injury while exercising at a health club and was awarded a judgment of $22,434.01. The club filed a chapter 7 bankruptcy petition and the plaintiff then sued its shareholders on the grounds that they ignored corporate formalities and that they failed to pay anything for their stock. The defendants argued that plaintiff's claim was time barred by the Michigan's three year statute of limitations for personal injury. The plaintiff argued that the ten year statute of limitations for collection actions applied. The court of appeals agreed, reasoning that

> [t]he lawsuit filed by plaintiffs against Hanby and Stivers was not one principally geared to establishing a right to recov-

er for a personal injury. Rather, having already obtained a judgment against the corporation on their personal injury claim, plaintiffs sought, through the lawsuit at issue here, to establish that the judgment obtained against the corporation was also a judgment against the defendants in their individual capacities. The only issue presented in this cause of action are those concerned with piercing the corporate veil and establishing that defendants were the alter egos of the corporation. At no time did plaintiffs raise the issue typically associated with a personal injury claim, i.e., that plaintiff received an injury as a result of some negligent act or omission of the defendants. Thus, in its most basic sense, this was an action to establish an identity of interest between these defendants and the Shape–Up Shoppe.

*Id.* at 553, 394 N.W.2d 412.

The reasoning of these cases is persuasive. Alter ego and instrumentality theories of recovery cannot readily be classified under tort or contract doctrine. A plaintiff asserting such a theory does not allege direct damage as a result of the challenged conduct. Rather, these are equitable doctrines allowing a party to recover derivatively for the debts of a controlled corporation. The corporation is always the underlying debtor in an action to pierce the corporate veil. Since the liability of an alter ego entity is derivative, it is both logical and just that the longer limitations period for enforcement of a judgment be imputed to such an action.[3]

Count II of the complaint is seeks only to establish Snider's derivative liability for Clawson's obligations. In order for the government to prevail, the proofs will center around the corporate structure of Clawson, its capitalization, and the degree of direct control exercised by Snider. Issues

---

**3.** The idea that the alter ego and the corporation should be treated as a single entity for limitations purposes is well established. *Fletcher's Cyclopedia of the Law of Private Corporations* states:

> As applied to statutes of limitations, the alter ego theory means that, when a party is regarded as identical to a corporation, the filing

of a cause of action against the corporation will toll the limitations period as to the alter ego.

1. *Fletcher Cyc. Corp.* sec. 45 (Perm Ed.). *See also American Petrofina Co. of Texas v. Crump Business Forms, Inc.,* 597 S.W.2d 467 (Tex.Civ. App.1980).

pertaining to the underlying debt are irrelevant, unlike the issues which might be litigated in Count I. Moreover, if Clawson were found not liable for the reimbursement, Snider's liability would be entirely extinguished. Snider's personal liability is wholly derivative of Clawson's. No independent claims have been lodged against him. It is clear from the circumstances of the case and Count II of the complaint that the government's claim against Snider must be characterized as an action to enforce a judgment against the corporation.[4]

In his supplemental brief, Snider attempts to distinguish the cases cited by the Court on the grounds that the plaintiffs in those cases were unaware that the corporate defendants were insolvent until after a judgment had been entered. In this case, he argues, the United States knew since at least 1983 that Clawson was without assets and that any recovery would have to come from Snider. Snider also points out that since the PRRB made a final determination of Clawson's indebtedness in 1984, no judgment against the corporation was necessary for the United States to proceed against Snider. This is incorrect. The issue of whether the United States is entitled to prejudgment interest was not determined in the PRRB proceeding. This is not an insignificant question, as the addition of prejudgment interest increases Clawson's liability by about half a million dollars. While it might be objected that form is being exhaulted over substance, it simply would be unfair to have a determination of Clawson's dollar liability in circumstances where Clawson would not be able to participate. It is also unclear whether a determination of Clawson's dollar liability would have operated as *res judicata* following the lifting of the bankruptcy stay. If not, the possibility exists for inconsistent deter-

minations. It is both impractical and unfair to require the United States to proceed against Snider in the absence of a final adjudication of Clawson's liability.[5]

### IV.

Accordingly, the Court is satisfied that Count II is not subject to the six year limitations period applicable to any claim for reimbursement for a medicare overpayment. Snider's motion for summary judgment is therefore DENIED.[6]

SO ORDERED.

---

4. Snider's insistence that he has been prejudiced by the United States' delay in filing the present action against him somewhat disingenuous. It was, after all, his intransigent litigation strategy which kept the matter tied up in the bankruptcy court for so many years.

5. Snider also objects to the application of the judgments limitations period on the grounds that no judgment against Clawson has yet been entered. While this may have been true at the time Snider's motion was drafted, it is not true now. Indeed, the argument is somewhat curi-

ous since neither Snider nor Clawson opposes the entry of a judgment against Clawson.

6. Denial is without prejudice to Snider's right to file a motion for summary judgment on the merits of alter ego liability. Although issues relating to this claim were alluded to in the papers in the present motion, the United States has not addressed Snider's arguments on the merits. Therefore the Court is unable to make an informed ruling on Snider's arguments at this time.