**PROVIDENT LIFE AND ACCIDENT IN-
SURANCE COMPANY, and its affiliate,
Provident Life and Casualty Insurance
Company, Plaintiffs,**

v.

**The UNITED STATES of America and
Louis W. Sullivan, M.D., Secretary of
the United States Department of Health
and Human Services, Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY,
Defendant.**

Nos. Civ–1–89–190, Civ.–1–89–316.

United States District Court,
E.D. Tennessee, S.D.

June 3, 1991.

Timothy H. Bolden, Provident Life and Acc. Ins. Co., Chattanooga, Tenn. and Rita M. Theisen, Charles W. Havens, III, and Michael F. McBride, Leboeuf, Lamb, Leiby & MacRae, Washington, D.C., for Provident.

Michael F. Hertz, Stephen D. Altman, Stanley E. Alderson and Glenn S. Kaplan, U.S. Dept. of Justice, Washington, D.C., for the U.S.

## MEMORANDUM

EDGAR, District Judge.

This matter is before the Court upon the renewed motions of Provident Life and Accident Insurance Company ("Provident") (Court File No. 172) and the Government for summary judgment (Court File No. 173) as to Provident's defenses relating to damages, not liability.

### I. Background

This lawsuit grows out of various amendments to the Medicare Act, 42 U.S.C. §§ 1101 *et seq.*, which provide that Medicare is the secondary payor to group health plans under certain circumstances, including end-stage renal disease, the "working aged," and the active disabled. ("MSP provisions"). *See* 42 U.S.C. §§ 1395y(b)(2), (3), (4) (1989). Under these provisions, "any entity responsible for payment" under these group health plans has the primary responsibility to pay for the insured's health care costs over Medicare which would then pay on a secondary basis. These consolidated actions were filed in order to determine Provident's responsibilities under the MSP provisions. In an earlier memorandum opinion and order, this Court ruled that Provident was liable for payment under the MSP provisions if it provided insurance under an employer group health plan as opposed to solely administrative services. 740 F.Supp. 492. (Court File Nos. 82, 83, as amended by Court File Nos. 84, 85 and 111, 112). In addition, the Court held that the Government is seeking recovery of Medicare primary payments under its independent statutory right of recovery as opposed to merely an action under subrogation. The issue now before the Court centers on which, if any, of the following defenses Provident may assert, as a matter of law, in the damages phase of this suit: (1) estoppel, (2) laches, (3) common law waiver, (4) statutory waiver, (5) mitigation of damages, and

(6) set-off. The issue is *not* whether Provident is in fact entitled to these defenses.

### II. Discussion

A motion for summary judgment shall be granted if, based on the record as a whole, there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party "bears the burden of clearly and convincingly establishing the non-existence of any genuine issue of material fact, and the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

However, "[o]nce the moving party presents sufficient evidence to support the motion under Rule 56(c), ... [t]he nonmoving party is not entitled to a trial merely on the basis of allegations; *significant probative evidence* must be presented to support the complaint." *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986) (emphasis supplied). Only factual disputes whose resolution "might affect the outcome of the suit" are "material" and preclude the entry of summary judgment. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). If, after reviewing the evidence, it appears that no such genuine issue of fact exists, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if it becomes clear that no reasonable jury could find in favor of the plaintiff at the close of the proof, then dismissal under Rule 56 is in order. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### A. Estoppel

Provident argues that estoppel is available as a defense in this action because (1) Health Care Financing Administration ("HCFA") officials were aware from the initial enactment of the MSP provisions

that its contractors made primary payments when Medicare did not have that responsibility, (2) HCFA officials encouraged this practice, and (3) as a result, Provident was injured since it may now, for various reasons attributable to the lapse of time, not be able to recover from other entities, *i.e.*, employers, the amount of primary payments for which it may now be responsible. (Court File No. 172 at 13–15). To succeed in its assertion that the Government is now estopped from recovering mistaken primary payments, Provident must not only show that estoppel is a proper defense as a matter of law under these circumstances, but also that Provident reasonably and detrimentally relied upon the actions of HCFA officials and/or its agents.

In *Heckler v. Community Health Services,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), the Supreme Court expressly left open the question of whether estoppel could be asserted against the Government, refusing to hold "that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." (emphasis in original) (footnote omitted). Thus, a case may exist where estoppel could be asserted against the Government.

■ However, in order to succeed upon such a defense, Provident must establish not only the traditional elements of estoppel, but also some "affirmative misconduct" on the part of the Government and that the public's interest is outweighed by the unfairness in imposing liability upon Provident. *Watkins v. United States Army,* 875 F.2d 699, 707 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990) (Army affirmatively misrepresented in its official records throughout plaintiff's fourteen-year military career that he was qualified for reenlistment, even though Army regulations provide that homosexuality constitutes a nonwaivable disqualification for reenlist-

ment.). *See Housing Authority v. Bergland,* 749 F.2d 1184, 1190 (6th Cir.1984) (No basis existed for estopping the Government from denying an application for federal funds because the preliminary site development had taken place in anticipation of approval of the application or because similar applications had previously been granted under an error of interpretation by governmental officials.). The Court concludes that this is not the exceptional case which the Supreme Court referred to in *Heckler.*

■ To establish affirmative misconduct, Provident must show that the Government, acting through an authorized agent, made an affirmative misrepresentation or affirmatively concealed a material fact. *Watkins,* 875 F.2d at 707. *See Lavin v. Marsh,* 644 F.2d 1378, 1383–84 (9th Cir.1981) (While a "pervasive pattern of false promises" will give rise to an estoppel against the Government, "mere failure to inform or assist does not justify the application of equitable estoppel," even if negligent.). Provident argues that since HCFA officials allegedly knew that Medicare's contractors were making primary payments and allegedly encouraged this practice, "HCFA's failure to take the most basic steps to implement the Medicare program violates the minimum standards that citizens are entitled to expect in their dealings with the Government." (Court File No. 172 at 15). However, even accepting Provident's allegations regarding HCFA's conduct as true, that conduct does not rise to the level of affirmative misconduct. HCFA did not misrepresent the MSP provisions nor did it conceal Provident's rights and obligations under those provisions. Instead, even the evidence submitted by Provident in support of its estoppel argument establishes that HCFA, while aware of overpayments made by Medicare, still intended to recover those funds. This evidence included (1) a letter written by John W. Jansak, Director of the Office of Program Administration at the Department of Health and Human Services ("HHS") regarding proposed regulations entitled *"Guidelines for Intermediaries and Carriers to Use For Processing Claims*

*and Effecting Recoveries and Services Furnished to Working Aged/Spousal Medicare Beneficiaries"* (Court File No. 172, Exhibit 5) (emphasis added), (2) Testimony of Gail Wilensky, HCFA Administrator, before a Senate Subcommittee wherein she testified as to the complications involved in obtaining MSP information prior to making Medicare payments on a primary basis (Court File No. 172, Exhibit 15), and (3) a letter by Robert D. Otten stating that "[e]nsuing negotiations between the AMA and HCFA resulted in all Medicare carriers being instructed to not suspend Medicare claims where Medicare was suspected of being the 'secondary payor.' *Carriers were directed, however, to recover any improperly paid amount in accordance with the standard recovery instructions set forth in the Medicare Carriers Manual."* (Court File No. 172, Exhibit 16) (emphasis added). Further, allegations that Medicare contractors returned reimbursement checks sent to them by Provident (Court File No. 172, Exhibit 8, Deposition of Sandra Staley), also do not rise to the level needed to show affirmative misconduct, since Provident has not established that Medicare contractors have the authority to determine the ultimate disposition of MSP claims. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.")

■ More importantly, Provident has failed to establish how any alleged harm to it outweighs the public's interest in recovery. In this case, the Court has held Provident liable for Medicare overpayments where Provident provided insurance coverage, as opposed to solely administrative services. This suit, therefore, seeks recovery of funds wrongfully paid out of the public fisc. The Government, therefore, is acting in its sovereign capacity. The public interest is substantial, especially when viewed against the legislative background of the MSP provisions showing that their enactment was tied to budget savings. Also, when the MSP provisions were initially enacted, Provident along with other insurance companies were clearly aware of their obligations under the statute. First, Provident was aware of the potential liability as evidenced by letters and memoranda which state so directly (Court File No. 176, Exhibits 1, 3, 4, 5, and 6); second, Provident attempted to compensate for this increased liability by increasing its premiums (Court File No. 176, Exhibit 2, 7, 9 and 10); third, when Provident became aware of Medicare's continued overpayments, it apparently negotiated and entered into agreements with its customers to cover liability that may arise in the future (Court File No. 176, Exhibits 6, 7, and 8). All of these factors establish that Provident did not reasonably rely upon any representations made by HCFA or its authorized agents, or that Provident suffered any injury as a proximate result. Instead, Provident could and very clearly did use varied means at its disposal in protecting itself against potential liability. The defense of estoppel is, therefore, not here available to Provident. The Government shall be GRANTED and Provident DENIED a partial summary judgment on this issue.

**B. Laches**

■ The Supreme Court has held on several different occasions that laches is not available against the Government when it seeks to invoke public rights. It is well established that the sovereign is immune from the equitable doctrine of laches when it asserts public rights. *See Costello v. United States,* 365 U.S. 265, 281, 81 S.Ct. 534, 542–43, 5 L.Ed.2d 551 (1961) (Public policy of preserving the public rights, revenues, and property from injury and loss by the negligence of public officers precludes the application of laches as a defense against the sovereign.); *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."); *Chesapeake & Delaware Canal*

*Co. v. United States,* 250 U.S. 123, 125, 39 S.Ct. 407, 408, 63 L.Ed. 889 (1919) ("it is settled beyond controversy that the United States, when asserting 'sovereign' or governmental rights, is not subject to either state Statutes of Limitations or to laches."). The basis for this well worn axiom rests upon the fact that the Government can only transact its business through its agents, and the public should not be made to suffer the loss of its rights because of the negligence of the Government's agents. *California v. United States,* 512 F.Supp. 36, 40 (N.D.Cal.1981). The question now becomes whether the present suit by the Government is one to enforce public rights.

■ The present suit is an attempt by the Government to recover payments to beneficiaries and health care providers made from the Medicare Trust Fund which should have been made by a particular beneficiary's group health plan. This is clearly the sort of suit to which the bar on equitable defenses should apply. The Government is seeking to recover monies mistakenly paid out of the Medicare Trust Fund. Thus, the doctrine of laches may not be applied against the Government so as to bar recovery. Summary judgment, therefore, will be GRANTED the Government and DENIED Provident as to the defense of laches.

### C. Statutory and Common Law Waiver [1]

The MSP provisions provide that "[t]he Secretary may waive the provisions of this subparagraph in the case of an individual claim if he determines that the probability of recovery or amount involved in such claim does not warrant the pursuing of the claim." 42 U.S.C. §§ 1395y(b)(1), (2)(B), (3)(A)(ii) (1989). Provident argues that the Government has waived recovery for Medicare primary payments for classes of claims based upon a certain amount, and payments made more than a certain number of months previously, in addition to payments on individual claims. The Government maintains that only the statutory waiver as to individual claims exists and that it has not waived recovery under the statute as to any individual claim.

In arguing that the Government has waived recovery as to classes of claims, Provident relies upon HCFA's Intermediary Manual dated May 1983 which states:

> 3491.7 *Identification of Cases by Intermediary and Action Where There Is Indication of Possible Employer Plan Coverage.*
>
> . . . .
>
> If in anticipation of these instructions, you have listed claims in which there is indication of possible employer plan coverage, and the claim is for $50 or more, instruct the provider to pursue a claim with the employer plan. If Medicare primary benefits were paid on such listed claims and it is determined that only secondary benefits should have been paid, take the recovery actions described in the last paragraph of § 3491.14. [$50 rule] [2]
>
> Whenever processing a claim for secondary benefits for services furnished an individual who meets the criteria in § 3491.3, the intermediary should search its records for any claims on which it paid primary benefits for services furnished that individual during the 12–month period prior to the month in which the current claim is being processed but no earlier than January 1, 1983. . . . [12–month rule] [3]

(Court File No. 172, Exhibit 1). Provident also relies upon the Carriers Manual which states:

> 3336.5 *Carrier Action Where There is Indication on a Claim that Medicare May Be Secondary Payer.*
>
> . . . .

---

1. Since the parties have treated these two defenses similarly for purposes of argument, so shall the Court.

2. HCFA has amended these regulations to state $250 instead of $50 (Court File No. 172, Exhibit 4 at 32).

3. HCFA has amended these regulations to state 27 months instead of 12 months (Court File No. 172, Exhibit 4 at 34).

Where Item 9 of the HCFA 1500 or block 5 of the HCFA 1490S shows another insurer which appears to be an employer health plan, and the amount payable on the claim is less than $50, pay primary Medicare benefits and flag the claim. Once the individual has submitted claims on which the total amount payable equals $50 or more do not make any further payments. Develop with the beneficiary, or where the insurer's address and insured's identification are available develop with the insurer, to determine whether primary benefits can be paid by the private insurer. If the development indicates that there is primary employer health plan coverage for the services, deny payment, and instruct the beneficiary to file a claim with the employer plan for those services and for all other services received on or after January 1, 1983 and for which Medicare benefits have been claimed. (See § 4301.) When a primary claim is denied the beneficiary should be informed of the possibility of filing for Medicare secondary payments and that the expenses have been credited to an unmet deductible as appropriate. [$50 rule]

When a carrier receives a claim for secondary Medicare benefits for services to an individual who meets the criteria in § 3336.3, the carrier should search its records for any claims for services furnished that individual during the 12–month period prior to the month the current claim is being processed, but not earlier than January 1, 1983, on which it paid primary benefits and which have not been annotated in accordance with § 3336.10 to indicate a valid prior employer plan denial which would apply to subsequent claims. Where such prior claims are identified and the amount of Medicare benefits paid is $50 or more follow the recovery instructions in § 3336.11.

(Court File No. 172, Exhibit 2). Also, the deposition of Herbert Schankroff indicates that HCFA contractors did not always research paid claims for small amounts or from the earlier years due to the allocation of available funds. (Court File No. 172, Exhibit 3). However, this evidence submitted by Provident as to waiver of classes of claims based upon amount and date paid tends only to establish that the Government was setting forth enforcement priorities for its contractors, for example, waiting until the aggregate sum of claims for a particular beneficiary was more than $50 (now $250).

■ While Provident has not produced sufficient evidence at this time to support a finding of waiver by the Secretary or an authorized representative of a class of claims based upon a common denominator such as amount or date paid, this does not rule out the possibility that such a waiver has occurred or will occur. As to this point, the Government contends that the statutory waiver language applies solely on an *ad hoc*, truly individual, basis. The Court, however, finds that such was not the legislative intent at the time the statute was enacted. To this end, the Court cites the following excerpt:

> The Secretary could waive the provisions of this amendment [TEFRA] in the case of individual claims where he determines that the probability of recovery or the amounts involved do not warrant pursuing such claims. The committee expects that the Secretary will establish in regulations rules regarding minimum *amounts recoverable* and the procedures for seeking recovery....

Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 1982 U.S.Code Cong. & Admin.News (96 Stat.) 793 (emphasis added). As indicated in the above excerpt, Congress did not intend that the codified waiver language would be so narrow as to apply only on an individual, versus class, basis. Thus, while Provident, as yet, has not presented sufficient evidence to establish an effective waiver of a class of claims, such a defense is not foreclosed by the language of the statute.

■ In addition to arguing the Government has waived recovery as to classes of Medicare primary payments, Provident also contends that the Government, through HCFA contractors, waived recovery on individual claims by returning payments sub-

mitted by Provident designed to cover its primary payment responsibility. (Court File No. 172, Exhibit 8, Deposition of Sandra Staley). However, Provident has failed to present any evidence that these HCFA contractors intended to or were authorized to waive recovery on an individual claim. Nevertheless, the MSP provisions clearly provide that the Secretary may waive recovery as to an individual claim.[4] Thus, the Court finds that even though Provident has not, as yet, presented sufficient evidence to prove a waiver in fact as to an individual claim or class of claims, the Secretary or an authorized representative may grant such a waiver pursuant to the statute. Given this finding, both parties' motions for summary judgment on this issue will be DENIED.

### D. Mitigation

Provident argues that not only has the Government unnecessarily increased its damages but has injured Provident in the process by (1) failing to implement procedures that would stem the flow of mistaken overpayments by Medicare and (2) failing to enforce procedures that were implemented. In particular, Provident attacks the Government's apparent intention to "abandon" its first claim development procedure[5] and to withhold demands for payment where the Government has been apprised of the primary/secondary status of a particular claim or individual in cases where the Government is in litigation with a particular insurance company. The Government, on the other hand, contends that the doctrine of mitigation does not apply.

While this action is not one for either breach of contract or tort, it is also not one for recoupment. If it were a recoupment action, the Government would be asserting its claim for reimbursement against the party to whom it made the Medicare overpayment. *See United States v. Horton,*

622 F.2d 144, 145 (5th Cir.1980) (Government action to recover Medicare overpayments made to defendant nursing home); *United States v. Clawson Medical Rehab. and Pain Care Ctr.,* 722 F.Supp. 1468, 1469 (E.D.Mich.1989) (Government action to recover Medicare overpayments from defendant clinics and its operator); *United States v. Bushman,* 661 F.Supp. 266, 267 (E.D.Mo.1987) (Government action to recover Medicare overpayments). This is also not an action for restitution. As yet, the Government has not shown that Provident has been unjustly enriched at its expense.[6] This is particularly true in those situations where Provident may have the statutory responsibility to reimburse the Government for a Medicare overpayment but not have the contractual responsibility for the payment under the health plan's terms.

Instead, the Government, pursuant to its statutory right of recovery, is seeking to recover Medicare overpayments mistakenly paid on a primary basis to either the health care provider or the beneficiary. These payments indirectly benefited Provident to the extent that it was not required to pay as primary. However, in certain cases, such as minimum premium payment plans, the benefit is most likely to be that of the employer or other entity with the contractual responsibility for payment. The Government was damaged to the extent that it made erroneous overpayments. Nevertheless, even under this unique set of circumstances, the Government has the burden to mitigate its damages. The purpose behind the doctrine of mitigation is that a party should not be able to recover damages which could have been avoided if the party had made a reasonable effort or taken reasonable steps to avoid the loss in the first place. 22 Am.Jur.2d, *Damages* § 495 at 579 (1988).

---

**4.** As previously stated, the Court finds that this statutory waiver language also encompasses waiver of classes of claims with a common denominator such as the amount or date paid.

**5.** First claim development requires the Medicare contractor to investigate the existence of

other coverage before paying the first claim the contractor receives for a given individual.

**6.** A person who has been unjustly enriched at the expense of another is required to make restitution to the other. Restatement of the Law,. *Restitution* § 1 (1937).

■ In this case, the Government, by statute, is under an obligation not to pay as primary in given situations. 42 U.S.C. § 1395y(b) states that "[p]ayment ... may not be made" with respect to any item or service to the extent that payment has been made, or can reasonably be expected to be made by a group health plan. Where the Government has made such payments knowing or later learning of other primary insurance coverage, the Court finds that the Government has a duty to mitigate losses which result from those payments.[7]

This duty of mitigation has several applications to this case. The Government has apparently consciously elected to pay claims subject to the MSP provisions and not pursue collection of those claims from insurance companies, such as Provident, with whom it is currently engaged in litigation. The Government's current policy with respect to these companies is as follows:

This is to clarify contractor handling of Medicare Secondary Payer (MSP) cases involving Blue Cross and Blue Shield of Michigan (BCBSMI), Provident Life and Accident Insurance Company and the Travelers Insurance Company; these are insurance companies with which we are in litigation over MSP recoveries. We previously advised contractors to cease recovery efforts for working aged situations from these three insurers.

This will explain what we meant when we said "cease" and will provide further guidance on what is required of contractors.

Contractor X discovers a working aged case where one of the above companies is the insurer, underwriter, or third party administrator. The contractor will do the following:

(a) Annotate its records and cost avoid future claims until information is received indicating that a MSP situation no longer exists;

(b) Update the Regional Data Exchange System correctly and accurately that an MSP situation exists so that other contractors can cost avoid claims;

(c) Review its records to determine if any prior payments had been made before the information concerning coverage as a working aged beneficiary was discovered. There are two scenarios:

(1) There were no claims paid before information was received indicating that an MSP situation exists.

(2) The contractor review of the records indicates that 10 bills were paid as a primary, which should have been paid by the company in question.

Records of all prior improper primary payments (under which the normal procedure is to send a demand letter to the insurer, underwriter or third party administrator) are accumulated. The total of the primary payments to be recovered and the basis for the contractor's determination that a MSP situation exists is forwarded to the RO [Regional Office]. Because of the litigation, UNDER NO CIRCUMSTANCES SHOULD A WORKING AGED RECOVERY LETTER BE SENT TO BCBSMI, PROVIDENT LIFE AND CASUALTY, OR THE TRAVELERS INSURANCE COMPANY. In addition, for BCBSMI do not send a demand letter for cases involving the MSP End Stage Renal Disease or Disability Provisions. CONTRACTORS SHOULD DEVELOP CASES AGAINST THESE ENTITIES TO THE POINT OF SENDING THE DEMAND LETTER, REFER THE MATERIALS TO THE RO.

(Court File No. 172, Exhibits 13 and 14).

■ In addition, the Court is concerned with the Government's apparent adoption

---

**7.** The Court notes that while the recovery procedures set forth in HCFA's Intermediary and Carrier Manuals (§§ 3491 and 3336, respectively) do not rise to the level of regulations or rulemaking which would affirmatively bind the Government in these circumstances, that does not preclude consideration of these procedures in determining whether the Government has complied with its statutory duty regarding primary payments. *See generally Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 676, 106 S.Ct. 2133, 2138–39, 90 L.Ed.2d 623 (1986); *Texas Medical Assoc. v. Sullivan,* 875 F.2d 1160, 1166–67 (5th Cir.1989). *See* Court's memorandum opinion filed June 14, 1990 (Court File No. 82 at 34).

of a "pay and chase" procedure[8] with respect to MSP overpayments. This procedure is particularly egregious with respect to those claims for services submitted solely to the Government, of which Provident would have no knowledge. Clearly, each time the Government makes a mistaken Medicare overpayment, it violates its statutory duty not to make such a payment. Additionally, under the current procedures since no time limits have been imposed, the Government can attempt recovery for claims fast approaching a decade old. Further, with respect to those overpayments upon which Provident never received a claim or demand for payment, Provident could suffer injury by not being able to seek possible contractual "indemnity" from the employer.[9] Consequently, as to those claims which arose prior to the initiation of this lawsuit where the Government was the only party to have received a claim for payment, the Court will consider the length of delay in seeking reimbursement and any possible prejudice to Provident thereby in determining whether such reimbursement will be allowed.

To avoid further possible injury to Provident, the Government will be given thirty (30) days within which to submit those MSP claims for which it seeks or intends to seek statutory reimbursement which arose subsequent to the initiation of this lawsuit if it has not already done so. In addition, from the date hereof, the Court will consider (1) whether the Government has submitted a claim for reimbursement within a reasonable time after the initial Medicare overpayment, i.e., six months, and (2) whether Provident has suffered any prejudice due to such delay in determining whether the Government is entitled to reimbursement for that claim.

**E. Set–Off**

 Provident seeks a set-off to the Medicare overpayments due the Government in the amount of overpayments that Provident has made by mistake. In particular, Provident claims that it has been mistakenly paying on a primary basis claims on behalf of those suffering from end-stage renal disease who were also either working aged or active disabled, persons for whom Medicare apparently has primary payment responsibility. Provident contends that the defense of set-off is available in the reimbursement action brought by the Government since the Government is deemed to have waived its sovereign immunity by filing suit. Additionally, relying on *Frederick v. United States*, 386 F.2d 481 (5th Cir.1967), Provident argues that its claim for set-off is a compulsory counterclaim under Fed.R.Civ.P. 13(a) and is, therefore, exempt from the requirements of 28 U.S.C. § 2406. The Court finds, however, that Provident's claim for set-off is subject to the requirements set forth in § 2406. Further, since Provident has not established that it has complied with those provisions, set-off is not available in the present action.

28 U.S.C. § 2406 provides:

In an action by the United States against an individual, evidence supporting the defendant's claim for a credit shall not be admitted unless he first proves that such claim has been disallowed, in whole or in part, by the General Accounting Office, or that he has, at the time of the trial, obtained possession of vouchers not previously procurable and has been prevented from presenting such claim to the General Accounting Office by absence from the United States or unavoidable accident.

The purpose behind this statute is to prevent the Government "from being surprised by claims it has not had time to consider administratively." *Frederick*, 386 F.2d at 489. The Supreme Court has consistently held that all claims for credit against the Government, whether legal or equitable, must first be presented to the

---

**8.** Under this procedure, Medicare contractors simply pay a claim whether Medicare is primary or not, hoping to later recover the money.

**9.** This "indemnity" would apply under those plans which Provident may have a statutory obligation to reimburse the Government, but the employer, or some other entity, retains contractual liability for the services rendered.

Treasury/General Accounting Office before being allowed to submit evidence at a subsequent trial on the issue. *See United States v. McCarl*, 275 U.S. 1, 12, 48 S.Ct. 12, 16, 72 L.Ed. 131 (1927) (In construing 28 U.S.C. § 774, the predecessor of § 2406, the Court stated, "the requirement of the section is satisfied when the claim is presented and disallowed by the officer who has power to allow the claim, although he is not a general accounting officer of the government."); *Smythe v. United States*, 188 U.S. 156, 173, 23 S.Ct. 279, 284–85, 47 L.Ed. 425 (1903) ("The defendants do not appear to have submitted to the accounting officers of the Treasury any request or claim for a credit for the $1,182, and no such claim could be made for the first time at the trial."); *Watkins v. United States*, 76 U.S. (9 Wall) 759, 764, 19 L.Ed. 820 (1876) ("No evidence to prove a claim for credit can be admitted at the trial, 'in suits between the United States and individuals,' unless it be shown that the claim has been legally presented to the accounting officers of the Treasury for their examination, and that it has been by them disallowed, except under certain special circumstances...."). The Sixth Circuit has issued an opinion on the subject stating:

> [The defendant] did not offer to prove that he had presented his claim for credit based on the judgment to the proper accounting officers of the government for their examination and that it had been disallowed by them, or that he was prevented from exhibiting the claim to such officers by absence from the United States or by some unavoidable accident. Failing to offer proof of one or the other of these conditions upon which the statute permits the assertion of a claim for credit in a suit brought by the United States, it was proper for the trial court to refuse to direct the jury to allow the claim as a set-off.

*Shaw v. United States*, 75 F.2d 175, 176 (6th Cir.1935) (citation omitted).

However, as previously stated, Provident relies upon a more recent Fifth Circuit opinion which analyzes § 2406 in light of Fed.R.Civ.P. 13. In *Frederick*, the Fifth Circuit stated:

> As we construe [§ 2406], it has no application where the sovereign already has laid aside its immunity by statute or by filing suit. A claim which otherwise qualifies to be filed as a compulsory counterclaim against the government is not subject to § 2406.... Section 2406 does have application where the claim is asserted as a permissive counterclaim under Rule 13(b)....
>
> It would be anomalous to hold that a defendant, in court in an action he did not bring, is required to plead a counterclaim against the government because it is compulsory under Rule 13(a) but that once pleaded his counterclaim is subject to dismissal on the ground he had not, before being sued, taken affirmative action to seek an administrative "credit" of the General Accounting Office.

386 F.2d at 489. (citations omitted) (footnote omitted). Nevertheless, this analysis had detractors even at the time of its publication. In his dissent, Judge Wisdom, in agreeing with the decision of the trial court to dismiss the defendant's counterclaim, stated:

> [D]isregarding the question of waiver of immunity, the defendant may not assert the counterclaim for other reasons. Bearing in mind that the present action is one by the United States against an individual, wherein the defendant makes a claim for a credit, defendant is precluded from making proof thereof under terms of § 2406 of Title 28, U.S.C.A., unless and until the claim has been presented to the General Accounting Office. There is no allegation that this has been done....

*Id.* at 491 (Wisdom, J. dissenting).

Regardless of whether the Court follows the literal interpretation of § 2406, which ostensibly requires all claims for credit to be processed administratively prior to judicial action, or the permissive/compulsory counterclaim distinction, the result would be the same. Under the first view, Provident has presented no evidence that its claim for a set-off has been submitted to

the General Accounting Office. Under the second view, the Court finds that Provident's claim for set-off is a permissive as opposed to a compulsory counterclaim. The Government, in its statutory reimbursement action, is seeking recovery on individual claims. These claims arise from transactions in which the Government made primary Medicare payments when it only had secondary responsibility. The claims upon which Provident is now seeking a right of set-off arise from transactions in which Provident made primary payments when Medicare had that responsibility. Consequently, the Government's and Provident's claims for payment do not arise out of the "same transaction or occurrence" as required by Fed.R.Civ.P. 13(a). Since Provident's claim for set-off is merely a permissive counterclaim pursuant to Fed.R.Civ.P. 13(b), Provident must first comply with the requirements set forth in § 2406. Without proof that it has done so or that it falls within one of the enumerated exceptions, summary judgment will be GRANTED to the Government on Provident's claim of set-off.